UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID PESHKE,

    Plaintiff,

v.

LINCOLN LIFE & ANNUITY CO. OF NEW YORK,

    Defendant.
_____/

Case No. 11-10864

SENIOR UNITED STATES DISTRICT JUDGE
ARTHUR J. TARNOW

MAGISTRATE JUDGE MARK A. RANDON

**ORDER REJECTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [22] AND DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD [13] AND GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [12] AND DENYING DEFENDANT'S MOTION TO STRIKE [19]**

Now before the Court is the Magistrate Judge's Report and Recommendation ("R&R") [22], entered September 30, 2011, recommending that Defendant's Motion for Judgment on the Administrative Record [13] be granted, Plaintiff's Motion for Summary Judgment [12] be denied, and Defendant's Motion to Strike [19] be denied as moot. On October 14, 2011, Plaintiff filed an objection [23] to the R&R. Defendant filed a response [24] to the objection on October 28, 2011.

**I. Standard of Review**

This Court reviews objections to a Magistrate Judge's R&R on dispositive issues *de novo*. *See* 28 U.S.C. § 636(b)(1)(C).

**II. Procedural Background**

This case concerns Defendant Lincoln Life & Annuity Co. of New York's denial of short-term partial disability benefits to Plaintiff David Peshke. Plaintiff filed a complaint in state court on January 28, 2011. Defendant removed to this Court on March 3, 2011. Plaintiff's Motion for

Summary Judgment was filed on July 22, 2011. On the same day, Defendant filed a Motion for Judgment on the Administrative Record. Defendant also filed a Motion to Strike Plaintiff's response to Defendant's motion for judgment on August 22, 2011. All three motions were referred to the Magistrate Judge. On September 30, 2011, the Magistrate Judge issued an R&R recommending that Defendant's Motion for Judgment on the Administrative Record be granted, Plaintiff's Motion for Summary Judgment be denied, and Defendant's Motion to Strike be denied as moot.

### III. Factual Background

Plaintiff, at the time the instant suit began, was employed as a Vice President of Human Resources by Inalfa Roof Systems, Inc. As part of his employment, Plaintiff was covered by a disability policy administered by Defendant. This disability policy is governed by the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq* ("ERISA"). Plaintiff has been treated since 1984 for chronic problems affecting his neck and lower back.

On April 23, 2010, Plaintiff submitted a claim for short-term partial disability benefits to Defendant. Specifically, Plaintiff's attending physician, Dr. Maltese, diagnosed Plaintiff with cervical facet pain, radiculopathy, and myofascial pain. Dr. Maltese's recommended limiting Plaintiff to working three (3) days a week (for 8-10 hours per day) for two (2) months. Dr. Maltese recommended physical therapy and possible surgery to treat Plaintiff's condition. The diagnosis was based upon several tests that had been conducted on Plaintiff. On February 25, 2010, Plaintiff was studied with complete imaging of his cervical spine because of his complaints of neck pain. A report on the imaging stated that Plaintiff had "[m]ultilevel degenerative disc disease from C4 - C6 as above." Admin. R. at 00051. On March 9, 2010, Plaintiff underwent an MRI of his cervical spine, which was compared with the February 25 imaging. The MRI found "[m]ild multilevel

degenerative change." Admin. R. at 00055. Finally, on March 15, 2010, Plaintiff underwent an Electromyographic ("EMG") Examination. This examination showed "positive waves" and "fibrilation" in two areas - the paraspinals left and pronator teres of the C6 and C7 area of Plaintiff's spine. Admin. R. at 00054. Dr. Maltese, after examining the test results, commented in his report that the "EMG/NCV studies done today on the above muscles and nerves reveals evidence of membrane irritability in the cervical paraspinal muscles on the left, as well as in the left pronator terest, suggestive of a left C6 radiculopathy." Dr. Maltese listed his impression as "Left C6 radiculopathy."[1]

Plaintiff's request for short-term partial disability benefits was approved starting on April 30, 2010 and extending through June 21, 2010. Later, Plaintiff's partial disability benefits were extended until July 27, 2010. Throughout this period Plaintiff engaged in Physical Therapy (beginning on April 2, 2010, and extending intermittently through July 26, 2010) and also was examined by Dr. Maltese on two additional occasions (June 2, 2010 and July 28, 2010). Plaintiff also saw a surgeon, Dr. Easton, who advised him of the possibility of surgery to reduce his pain. Plaintiff's condition during this period appears to have been improving, as he had improved flexibility and decreased pain due to physical therapy. However, Plaintiff's pain persisted, and Dr. Maltese suggested on both June 2, 2010, and July 28, 2010, that Plaintiff continue therapy and his work schedule of three(3) 8-10 hour workdays per week. Dr. Maltese stated in his notes that Plaintiff had told him that "his symptoms seem to worsen anytime he tries to increase his activity."

---

[1] Dr. Maltese's analysis of the EMG/NCV study does not appear in the administrative record, but rather was included with Plaintiff's response to Defendant's Motion for Judgment on the Administrative Record. Plaintiff alleges that Defendant deleted Dr. Maltese's analysis from the administrative record, a claim that Defendant denies. This allegation is discussed below in consideration of Defendant's Motion to Strike.

Admin. R. at 00076. Plaintiff was also treated with medication during this period. *Id.*

On September 8, 2010, Defendant sent Plaintiff a letter denying his application for short-term total disability.[2] "Totally Disabled" is defined by Defendant as "inability . . . to perform each of the Main Duties of your Own Occupation." Plaintiff had actually applied for "Partially Disabled" status, meaning "unable to perform one or more of the Main Duties of your Own Occupation, or [] unable to perform such duties Full-time." Defendant's letter stated that the medical documentation provided by Plaintiff did not support Total Disability as defined by Defendant's policy. The letter also stated that all the testing results provided by Plaintiff were "within normal limits or are age expected." The letter stated that Plaintiff had the right to appeal.

In a letter received by Defendant on October 4, 2010, Plaintiff, having retained counsel, appealed the denial of his short-term disability benefits. Plaintiff noted that Defendant's reading of the EMG was incorrect; the report and Dr. Maltese's analysis indicated irregularity in Plaintiff's left C6 area, indicative, according to Dr. Maltese, of radiculopathy. Plaintiff also noted that he was able to manage his symptoms *because* of his work restrictions and therapy, and that Dr. Maltese had recommended that these restrictions continue. Plaintiff also referenced a report from his physical therapist dated July 26, 2010 which stated that his physical therapy goals had only been partially met. Finally, Plaintiff noted that Defendant's analysis of his claim incorrectly was based upon the "Total Disability" standard rather than the partial disability that Plaintiff had actually applied for.

---

[2] One section of the letter states that "we have determined that you do not meet the definition of total disability or partial disability. . .," while another section states that "the medical documentation in your claim file does not support Total Disability as defined by this policy," with no mention of Partial Disability. Defendant apparently concedes in their brief that the initial benefit claim was analyzed only under the Total Disability standard, but argues that the fact that Plaintiff's claim was properly considered under the Partial Disability standard in the first appeal validates the appeals process.

Plaintiff did not present additional medical records because, according to Plaintiff's letter, "[y]ou [Defendant] are already in possession of the above medical records which support my client's position."

In processing Plaintiff's appeal, Defendant employed Dr. Richard Tyler as a "physician reviewer." Dr. Tyler did not examine Plaintiff, but reviewed the administrative record provided by Defendant. Dr. Tyler recited the evidence Plaintiff had provided. Dr. Tyler complained that "[n]one of these physicians has provided any clinical notes which describe any significant musculoskeletal or neurological deficit." Admin. R. at 00026. Dr. Tyler also opined that the EMG results "were normal," and noted without comment that the MRI had shown "multi-level degenerative changes of the cervical spine." *Id.* In his analysis, Dr. Tyler repeated his opinion that all test results were normal, that the "very sparse medical files indicate only that he has beck pain."[3] *Id.* Dr. Tyler concluded that "Information in this file does not support any clinical limitation . . . [t]here is nothing in the evidence submitted which would preclude claimaint from working full time. . . ." *Id.*

In a letter sent on December 14, 2010, Defendant denied Plaintiff's appeal. Defendant's letter provided a summary of the evidence submitted by Plaintiff, and concluded that the medical documentation provided did not support "restrictions and limitations that would he was not [sic] Partially Disabled under the terms of our policy beyond 7/28/2010." Admin. R. at 00022. The letter reminded Plaintiff that an additional final administrative appeal was available, and that Plaintiff had a right to file a civil action in court after all "required reviews of client's claim have been completed." Plaintiff did not file an additional appeal, but instead brought suit in state court.

---

[3] Notably, Dr. Tyler does not address, or even acknowledge, Dr. Maltese's diagnosis of radiculopathy.

5

## IV. Analysis

### Plaintiff's Failure to Exhaust Administrative Remedies

While ERISA contains no statutory requirement for exhaustion of administrative remedies, the Sixth Circuit has held that "[t]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 504 (6th Cir. 2004) (quoting *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991). However, "[t]here is a general exception to the exhaustion requirement 'when the remedy obtainable through administrative remedies would be inadequate or the denial of the beneficiary's claim is so certain as to make exhaustion futile.'" *Shields v. UnumProvident Corp.*, 415 F. App'x 686, 689 (quoting *Hill v. Blue Cross and Blue Shield of Michigan*, 409 F.3d 710, 718-19 (6th Cir. 2005)). To avoid the exhaustion requirement, a plaintiff must make a "clear and positive indication" of futility. *Shields*, 409 F.3d at 689 (quoting *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998)).

It is undisputed that Defendant's policy requires two administrative appeals. It is also undisputed that Plaintiff chose not to make a second administrative appeal. Plaintiff notes that Defendant utilized the same rationale in denying Plaintiff's first appeal as in denying Plaintiff's claim - that Plaintiff's claim was not supported by medical evidence. Plaintiff argues that a second appeal would have been futile given that Defendant had all the medical evidence available to Plaintiff but had twice made the same decision based on said evidence. As Plaintiff did not have any additional medical evidence to submit, Plaintiff argues that a third attempt to secure benefits would have been futile.

Defendant argues that there is no indication of futility because "Plaintiff failed to submit any medical evidence with his first appeal, and the Administrative Record does not contain any medical information documenting Plaintiff's condition after July 28, 2010, the day his claim was closed." Defendant also argues that Plaintiff had the opportunity to present "nine months of medical records to demonstrate the clinical course of his purportedly disabling condition . . . to further explain why he is able to work 8-10 hours per day for three days during a week, including travel to Mexico, but claims he is not able to work full-time five days a week." Defendant also argues that the fact that Defendant corrected its analysis of Plaintiff's claim from a Total Disability to Partial Disability during the first appeal demonstrates Defendant's willingness to consider new evidence.

### Plaintiff has Demonstrated Futility of Second Appeal

The Court finds that Plaintiff has made a clear and positive indication of futility, and that it is certain that further appeal would have resulted in an identical denial of benefits by Defendant. Defendant's first argument, that its willingness to correct the standard under which Plaintiff was evaluated to correctly evaluate him under the partial disability standard in his first appeal, is not persuasive. While Defendant corrected the error of their first review of Plaintiff's claim, their denial of benefits to Plaintiff in the appeal was conclusory and based on identical reasoning as Plaintiff's initial claim, which was analyzed under the total disability standard.

Defendant's second argument, that Plaintiff fails to demonstrate futility because Plaintiff did not submit additional medical evidence demonstrating the continuing course of his disability, also fails. As Plaintiff persuasively argues, it is unclear why Defendant, who was evaluating Plaintiff's claim for continued benefits after July 28, 2010, would have been helped in making such an evaluation with additional medical evidence regarding Plaintiff's condition in December 2010 or

7

May 2011. At the time Defendant was considering whether to extend Plaintiff's short-term benefits (from approximately June 28, 10, to September 8, 2010, when the denial was issued)[4] *Plaintiff had provided all available medical evidence.*[5] Had Plaintiff provided evidence in his second appeal that he was partially disabled in April of *2011*, it is unclear why this would have affected Defendant's consideration, on appeal, of the question of whether Plaintiff was partially disabled in July of *2010*. As Plaintiff correctly argues, no additional evidence was necessary for Defendant to make a determination in Plaintiff's first appeal, much less his second appeal; rather, it was Defendant's arbitrary review of Plaintiff's medical evidence that was defective. Thus, the Court finds that a second appeal by Plaintiff would have been futile, as it is certain Defendant would have rejected Plaintiff's appeal for reasons identical to its rejection of Plaintiff's initial claim and first appeal.

## Arbitrary and Capricious Standard of Review

This Court reviews an administrator's decision to deny benefits using the arbitrary and capricious standard of review. *Hunter v. Life Ins. Co. of N. Am.*, 2011 WL 2566357 at *3 (6th Cir. 2011) (quoting *Evans v. UnumProvident Corp.*, 434 F.3d 866, 875 (6th Cir. 2006)). The arbitrary

---

[4]Defendant's claim notes actually seem to indicate that a decision that Plaintiff's medical evidence was "inadequate" was made on August 9, 2010. A rejection on this basis was delayed, however, because Defendant was investigating whether Plaintiff was ineligible for benefits based on his status as a consultant, Plaintiff having formally retired some time in the past. Admin. R. at 00003.

[5]Defendant received medical information from Plaintiff up to the date he stopped receiving benefits; Plaintiff was seen by Dr. Maltese on July 28, 2010, and submitted medical evidence to Defendant on August 5, 2010, and August 8, 2010. Admin. R. at 00003. Plaintiff had requested continuing disability benefits after July 28, 2010, based on the recommendation of Dr. Maltese that he maintain his present work restrictions, as Dr. Maltese stated in his notes that Plaintiff had told him that "his symptoms seem to worsen anytime he tries to increase his activity." Admin. R. at 00076. Plaintiff also submitted medical evidence that Dr. Maltese opined showed evidence of radiculopathy.

and capricious standard "is the least demanding form of judicial review of administrative action . . . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998) (internal quotation marks and citation omitted). An administrator's decision will therefore be upheld "if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." *Id.*

The arbitrary and capricious standard "is not, however, without some teeth." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (quoting *Cozzie v. Metro Life Ins. Co.*, 140 F.3d 1104, 1107-08 (7th Cir. 1998)). "[T]he federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions." *Moon v. Unum ProvidentCorp.*, 405 F.3d 373, 379 (6th Cir. 2005). This Court reviews "the quality and quantity of the medical evidence and the opinions on both sides of the issues." *McDonald*, 347 F.3d at 172.

One factor this Court considers as part of review under arbitrary and capricious standard is whether there is a conflict of interest, and whether such a conflict influenced the plan administrator's decision. *Hunter*, 2011 WL 2566357 at *4 (citing *Carr v. Reliance Std. Life Ins. Co.*, 363 F.3d 604, 606 n.2 (6th Cir. 2004)). A conflict of interest exists when the insurer both decides whether the employee is eligible for benefits and is responsible for paying said benefits. *Hunter*, 2011 WL 2566357 at *4 (citing *Gismondi v. United Techs. Corps.*, 408 F.3d 295, 299 (6th Cir. 2005). In such a case "the potential for self-interested decision-making is evident." *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n.4 (6th Cir. 2000).

## The Plan Administrator's Review of Plaintiff's Claim and Appeal was Arbitrary and Capricious

Defendant's review of Plaintiff's claim and appeal was arbitrary and capricious. Defendant's review of Plaintiff's claim is lacking in a number of different ways.

First, Defendant's decision-making process in this review is lacking in terms of analysis given to the evidence provided by Plaintiff. As discussed above, Plaintiff provided extensive documentation of a history of back pain, treatment and diagnosis of radiculopathy, physical therapy reports that discussed Plaintiff's pain and mobility, as well as the results of an EMG and an MRI of Plaintiff's spine. Defendant provides no justification for discounting and, for that matter, completely ignoring the diagnosis of Plaintiff's physicians, as well as the plain evidence presented by Plaintiff. "Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

Defendant argues that Plaintiff has provided no explanation as to why he can work full-time three days per week but cannot work a full five-day work week. As is expressed in Dr. Maltese's case notes, a reduced work week has, along with therapy, helped Plaintiff to manage his pain. As late as July 28, 2010, Dr. Maltese recommended a continued restriction and limitation of a reduced work week as treatment for Plaintiff. The administrator "failed to offer any reason for rejecting [the treating physician's] conclusions about [claimaint's] ability to work. Generally speaking, a plan may not reject summarily the opinions of a treating physician, but must instead give reasons for adopting an alternative opinion." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 620 (6th Cir. 2006).

Second, Defendant relies on the review of Plaintiff's file completed by Dr. Tyler, who declares in a conclusory manner a lack of sufficient medical evidence and does not address Dr.

10

Maltese's diagnosis or the results of the rests performed on Plaintiff. "[A]dministrators cannot arbitrarily disregard reliable medical evidence demonstrating disability in favor of medical evidence lacking in thoroughness and reliability." *Hunter*, 2011 WL 2566357 at *6 (citing *Evans v. UnumProvident Corp.*, 434 F.3d 866, 879-80 (6th Cir. 2006)). Defendant never ordered an Independent Medical Examination of Plaintiff, and Dr. Tyler did not examine Plaintiff. A "failure to perform physical examination is 'one factor we may consider in determining whether a plan administrator acted arbitrarily and capriciously in giving greater weight to the opinion of the consulting physician.'" *Hunter*, 2011 WL 2566357 at *6 (quoting *Kalish v. Liberty Mut./Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 508 (6th Cir. 2005)). The fact that a plan gives "greater weight to a non-treating physician's opinion for no apparent reason lends force to the conclusion that [it] acted arbitrarily and capriciously. . . ." *Elliott*, 473 F.3d at 420.

Third, the sum total of Defendant's own analysis of Plaintiff's case consists of a recitation of the evidence in Plaintiff's file and conclusory declarations that (a) the results of the diagnostics performed on Plaintiff were completely normal (apparently contrary to the evidence in the record), (b) there was no evidence that Plaintiff could not work full time, and (c) there was no medical evidence that Plaintiff required restrictions or limitations on his physical activity sufficient to qualify for Partial Disability (again, ignoring Dr. Maltese's opinion and diagnosis). "[C]onclusory and unsupported statements that the documentation was . . . insufficient to support a finding of disability" do not demonstrate a deliberate and principle decision-making process. *See Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d at 170 (6th Cir. 2007).

In sum, Defendant acted arbitrarily and capriciously in its review of Plaintiff's claim and appeal. Defendant failed to explain why it disregarded the medical evidence present by Plaintiff and

11

the opinions of Plaintiff's treating physicians. Defendant failed to offer any explanation as to why it credited the opinion of its reviewing physician over the opinion of Plaintiff's treating physicians. Defendant also offered no justification for its conclusory statement that the medical evidence did not support a finding of disability. Defendant's unwillingness to credit or acknowledge the evidence presented by Plaintiff, combined with Defendant's purely conclusory reasoning in the denial of benefits makes it clear that "defendant's conflict of interest arising from its dual role as administrator and insurer . . . interfered with an objective review of the record." *Evans*, 434 F.3d at 479.

## Award of Benefits is the Proper Remedy

In cases where a plan administrator has acted arbitrarily and capriciously, "courts may either award benefits to the claimant or remand to the plan administrator." *Elliott*, 473 F.3d at 621. The Sixth Circuit has concluded that "where the problem is with the integrity of [the plan's] decision-making process, rather than that [a claimant] was denied benefits to which he was clearly entitled, the appropriate remedy generally is remand to the plan administrator." *Elliott*, 473 F.3d at 622 (citation and internal quotation marks omitted). However, "[p]lan administrators should not be given two bites at the proverbial apple where the claimant is clearly entitled to disability benefits. They need to properly and fairly evaluate the claim the first time around; otherwise they take the risk of not getting a second chance, except in cases where the adequacy of claimant's proof is reasonably debatable." *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 172 (6th Cir. 2007).

The Court concludes that remand is inappropriate, as Plaintiff is "clearly entitled" to benefits based on the medical evidence in the record. Plaintiff provided sufficient medical evidence, including the result of medical exams and the diagnosis of Plaintiff's attending physician. Defendant has not offered any evidence analysis in its conclusory determination that Plaintiff's

claim lacked sufficient medical evidence. *See Cooper*, 486 F.3d at 169-170 (remanding for an award of benefits after finding that denial was arbitrary and capricious based in part on file reviewer giving no explanation for ignoring evidence that supported plaintiff's claim).

This Court declines to give the plan administrator a second bite at the apple. Defendant never disputed Plaintiff's diagnosis of radiculopathy prior to July 28, 2010. Plaintiff has offered evidence of a disability after July 28, 2010, in the form of the opinion of Dr. Maltese that Plaintiff's health required a continuing restriction in the number of days worked. Defendant failed to offer objective evidence of its own indicating that Plaintiff did not suffer from a disability. An award of benefits is warranted. This Court will remand to the plan administrator for a determination of the proper length of time that Plaintiff should have received short-term disability benefits from the time benefits were cut off on July 28, 2010. Plaintiff may supplement the record with additional evidence sufficient to permit the plan administrator to make a determination of the proper length of the award of benefits.

In his complaint and motion for summary judgment, Plaintiff also seeks long-term disability benefits. Plaintiff has made no claim to Defendant for long-term disability benefits, and presents no evidence that said benefits are warranted. Therefore, the Court will not direct an award of long-term disability benefits.

**Defendant's Motion to Strike**

As discussed above, *supra* p. 4 n. 1, Dr. Maltese's analysis of the EMG/NCV study does not appear in the administrative record, but rather was included with Plaintiff's response to Defendant's Motion for Judgment on the Administrative Record. Plaintiff alleges that Defendant deleted Dr. Maltese's analysis from the administrative record. Dr. Maltese's analysis of the EMG is an

important component of Plaintiff's claim, as it offers Dr. Maltese's interpretation of the EMG. After examining the EMG, Dr. Maltese concluded that the results indicated radiculopathy in the left C6 area of Plaintiff's spine.

In a motion to strike filed on August 22, 2010, Defendant argued that the court should not admit Dr. Maltese's analysis into evidence, as it was not included in the administrative record. Defendant offers no explanation as to why Dr. Maltese's analysis, which was the second of two pages of the EMG record (the first page of which is included in the record at p. 00053) was not included in the administrative record, except to state that Defendant never received the page in question. Plaintiff claims to have faxed the analysis along with his MRI and Spinal Imaging results (a total of five (5) pages of medical records). Notably, in Defendant's Claim Profile of Plaintiff's claim, Admin. R. at 00003, there is a note from August 5, 2010 that states "Rec'd 2 pages of a 5 page fax from Dr. Maltese. Spoke with Ee and he is having the 5 pages re-sent to me a [sic] the info that was mailed from Dr. Wilhelm. Will look for." This five-page fax seems to be the indicated medical record; without Dr. Maltese's analysis, only four pages of medical records are present in the administrative record. It is unclear whether Defendant deliberately deleted Dr. Maltese's analysis or, more charitably, simply did not follow-up with Dr. Maltese's office to make sure complete medical records were received.[6]

Regardless, while a court reviewing a plan administrator's decision in a case governed by ERISA will normally confine its review of the evidence to the administrative record, if evidence

---

[6]Notably, page 1 of the EMG, which was included in the administrative record, has "(continued)" printed on the bottom of the page in the version presented by the Plaintiff. In the version of this page included in the administrative record, this indication is concealed by text indicating the page number of Defendant's records.

outside the record is necessary "to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as . . . alleged bias on its part," said evidence may be reviewed by the Court. *Buchanan v. Aetna Life Ins. Co.*, 179 F. App'x 304, 308 (6th Cir. 2006). Plaintiff alleges bias in the decision-making process, and Dr. Maltese's analysis falls into this exception. Therefore, Defendant's Motion to Strike is denied.

## V. Conclusion

The Court having reviewed the record in this case, the Opinion and Order of the Magistrate Judge is hereby **REJECTED. IT IS ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED IN PART**. Defendant's Motion for Judgment on the Administrative Record is **DENIED.** Defendant's Motion to Strike is **DENIED.** Plaintiff's claim is remanded to the plan administrator for an award of short-term partial disability benefits. The plan administrator shall make a determination of the proper length of time that Plaintiff should have received short-term partial disability benefits from the time benefits were wrongfully discontinued on July 28, 2010. Plaintiff may supplement the record with additional evidence sufficient to permit the plan administrator to make a determination of the proper length of the award of benefits.

**SO ORDERED.**

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: December 12, 2011              Senior United States District Judge

---

**CERTIFICATE OF SERVICE**

I hereby certify on December 12, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on December 12, 2011: **None.**

s/Michael E. Lang
Deputy Clerk to
District Judge Arthur J. Tarnow
(313) 234-5182